IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSIE SALAZAR, *Individually,* | § | |
| ROSE RICH, *Individually and as* | § | |
| *Representative of the* ESTATE | § | |
| OF SAMUEL SALAZAR; and | § | |
| ANNETTE RODRIGUEZ, | § | |
| *as Next Friend for* A. S., Minor Child | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:12-cv-24 |
| | § | JURY |
| NUECES COUNTY, TEXAS; | § | |
| CHRISTUS SPOHN HEALTH SYSTEM | § | |
| CORPORATION d/b/a CHRISTUS SPOHN | § | |
| HOSPITAL CORPUS CHRISTI; | § | |
| DR. GILBERT MALDONADO, *Individually;* | § | |
| and NORMA REAL, *Individually* | § | |

## PLAINTIFFS' SECOND AMENDED ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:**

**NOW COME** Plaintiffs, Josie Salazar, *Individually*, Rose Rich, *Individually and as Representative of the* Estate of Samuel Salazar and Annette Rodriguez, *as Next Friend for* A.S., Minor Child, bringing this their *Plaintiffs' Original Complaint*, praying for damages against Nueces County, Texas, CHRISTUS SPOHN HEALTH SYSTEM CORPORATION d/b/a CHRISTUS SPOHN HOSPITAL Corpus Christi, Dr. Gilbert Maldonado, *Individually*, and Norma Real, *Individually*, who have denied Plaintiffs (and/or the deceased Samuel Salazar) their rights guaranteed by the Constitution and laws of the United States of America.

## I.
## JURISDICTION AND VENUE

1.     This court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1343(3) (civil rights).  This court also has supplemental jurisdiction pursuant to 28

U.S.C. §1367 to hear the state claims that will be set forth in this complaint. Venue is proper in the Southern District of Texas, Corpus Christi Division as this is the district where the claim arose in accordance with 29 U.S.C.§1391(b).

## II.
## PARTIES

2.     Plaintiff Josie Salazar, who brings this suit in hers own behalf, is a resident of Nueces County, Texas.

3.     Plaintiff Rose Rich, is the daughter of Samuel Salazar and brings this suit in her own behalf as well as on behalf of the Estate of her father, Samuel Salazar, is a resident of the state of Colorado.

4.     Plaintiff Annette Rodriguez , who brings this suit on behalf of her minor child, A.S., is a resident of Nueces County, Texas.

5.     Defendant Nueces County, Texas (hereinafter "County") is a political subdivision of the State of Texas, and has previously filed an answer herein.

6.     Defendant CHRISTUS SPOHN HEALTH SYSTEM CORPORATION d/b/a CHRISTUS SPOHN HOSPITAL CORPUS CHRISTI (hereinafter "CHRISTUS SPOHN HOSPITAL") is a domestic nonprofit corporation that has previously filed an answer herein.

7.     Defendant Dr. Gilbert Maldonado (hereinafter "Maldonado") was, at all times material to this suit, a psychiatrist contracted by CHRISTUS SPOHN HOSPITAL CORPUS CHRISTI. Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of his contract and authority with CHRISTUS SPOHN HOSPITAL CORPUS CHRISTI. Defendant has previously filed an answer herein.

2

8.      Defendant Norma Real (hereinafter "Real").was, at all times material to this suit, an employee with CHRISTUS SPOHN HOSPITAL CORPUS CHRISTI and/or an agent of NUECES COUNTY SHERIFF'S DEPARTMENT.  Each of the acts complained of herein arises from the conduct of Defendant while acting under color of state law, and was committed within the scope of her employment and authority.  Defendant can be served with summons at the NUECES COUNTY SHERIFF'S DEPARTMENT,  901 Leopard St, Corpus Christi, Texas 78401.

**III.**
**FACTS**

9.      Whenever it is alleged in this complaint that any Defendant did any act, thing, and/or omission, it is meant that Defendant and/or Defendant's officers, agents, servants, employees or representatives did such act, thing and/or omission and that at the time it was done with full authorization and/or ratification of Defendant or done in the normal and routine course and scope of employment of Defendant and/or Defendant's officers, agents, servants, employees or representatives.

10.     On or about January 9, 2010, Samuel Salazar (hereinafter "Mr. Salazar") was arrested by the Corpus Christi Police Department for sexually assaulting his own mother.  During the arrest Mr. Salazar stated to the arresting officers, "I want to kill myself with the scissors, I don't want to live" and "I am going to kill myself." Following this arrest, Mr. Salazar was transported to the Nueces County Jail.  Upon entry into the Nueces County Jail, Mr. Salazar received mental health screening through the intake process with the Nueces County Jail.  The mental health screening revealed that Mr. Salazar was suffering from current suicidal tendencies, had previously attempted to commit suicide and he was in serious need of mental health support services. Specifically, Mr. Salazar was

3

a mental health/mental retardation (MHMR) patient who had previously attempted to take his own life.  Despite same, Defendant County failed to provide Mr. Salazar with proper mental health services and failed to transfer him to an appropriate treatment facility for same.  Instead, Mr. Salazar was placed in unit 4R of the Nueces County Jail and he was not placed on a mandatory suicide watch as dictated by Defendant County's mental health intake screening procedures.

11.      On or about January 14, 2010, jailers employed by Defendant County were forced to move Mr. Salazar from his housing in unit 4R to a holding cell on the booking floor because Mr. Salazar had made suicidal statements directly to these jailers.  Numerous inmates housed near Mr. Salazar reported that they heard Mr. Salazar repeatedly yelling weird things and stating that Mr. Salazar was hearing voices.  Defendant County briefly placed Mr. Salazar on a suicide watch due to these suicidal statements he made, along with his other obvious suicidal tendencies and indicators.  On or about January 15, 2010, Defendant County took Mr. Salazar off the suicide watch and placed him back in a cell on the 4R unit.  Shortly after being taken off the suicide watch and placed back into the 4R unit, on January 16, 2010, Mr. Salazar attempted to take his own life by wrapping a piece of bed sheet around his neck and tying it to the step ladder of his metal bunk, in an effort to hang himself.  Jailers of Defendant County discovered Mr. Salazar hanging in his cell and he was transported to the Christus Spohn Memorial Hospital.  Mr. Salazar did luckily recover from this suicide attempt.  However, Defendant County failed to provide Mr. Salazar with any outside mental health services and/or release Mr. Salazar to an outside mental health facility better equipped and suited to deal with his open and obvious mental health condition that had now manifested into a full desire to end his life.

12.     On or about January 17, 2010, Mr. Salazar was transported back to the Nueces County Jail and placed back in a holding cell on the booking floor.  Despite Mr. Salazar's long MHMR history, his prior suicide attempts before entering the Nueces County Jail, his threats to commit suicide while held at the Nueces County Jail, and his actual and now fully realized attempt of suicide at the Nueces County Jail, Defendant County decided not to provide Mr. Salazar with outside mental health services.  Such decision was made by Defendant County with the advice and consultation of Defendant Maldonado, who clearly ignored the obvious contrary warning signs.  Defendant County, with the advice of Defendant Maldonado, took it upon itself to continue to supervise Mr. Salazar's medical and mental health despite not being properly equipped to do so.

13.     On or about February 2, 2010, Mr. Salazar was again moved from the booking floor holding cells and placed back on the 4R unit where he could not be easily monitored and where he did not have a fifteen minute suicide watch placed oh him.  Numerous inmates housed near Mr. Salazar reported that they heard Mr. Salazar repeatedly yelling weird things and stated that Mr. Salazar was hearing voices.  All of this information was reported to Defendants, and as usual, it was ignored. To no one's surprise, on or about February 7, 2010, in the early morning hours, Mr. Salazar was found crying in his cell and he again made statements that he was experiencing suicidal ideation directly to jailers employed by Defendant County.  Specifically, Mr. Salazar stated to Nueces County jailer Patrick Callis, "I do not want to have suicidal thoughts anymore, but other inmates found out about my charges and they are making me have those thoughts again."  Mr. Salazar was extremely scared because the other inmates were throwing coffee and urine on him when they would walk by his cell.  In response to his statement and the inmate threats, Mr. Salazar was removed from the 4R unit and placed in a holding cell on the booking floor.  However, Mr. Salazar was not placed on a

suicide watch and/or seen by a mental health specialist as dictated by his threats of suicide and concerns of threats by other inmates.  In fact, only a short time after Mr. Salazar was taken to the holding cell in the booking area, he was again returned to the 4R unit without the benefit of a suicide watch.  Defendant Real ignored protocol, failed to heed the obvious warning signs that Mr. Salazar was exhibiting, failed to notify Defendant Maldonado of Mr. Salazar's statements and obvious warning signs and cleared Mr. Salazar to return to the 4R unit where Mr. Salazar could not be easily monitored.  Thereafter, in the early evening hours of the same day, Mr. Salazar was able to tear fabric from his mattress, fashion it into a ligature, tie it to the rung of his metal bunk, wrap it around his neck and hang himself in an identical fashion to his earlier suicide attempt at the Nueces County Jail.  Mr. Salazar was again whisked away by paramedics to Defendant Christus Spohn Hospital. This time however, Defendants County and Christus Spohn Hospital were not so lucky as Mr. Salazar did not recover from his comatose state and he was pronounced dead.  Immediately prior to this, employees of Defendant County failed to conduct their "checks" as required by Defendant County's policy and/or jail standards, thus allowing Mr. Salazar to complete what he had repeatedly threatened and/or attempted.

14.     The Defendants completely ignored the serious medical and mental health needs of Mr. Salazar during his detention at the Nueces County Jail.  Every step of the way during said detention, the Defendants failed to take appropriate action to prevent Mr. Salazar's senseless death when they had a duty to do so and ignored a very serious and deadly mental condition.

15.     As a result of the Defendants' actions and/or inactions, Mr. Salazar sustained catastrophic bodily injury, including, but not limited to, death.  Such death was preventable had Defendants County and/or Christus Spohn Hospital provided proper medical/psychological care to Mr. Salazar

and/or had they headed the numerous warning signs of suicide, the continued threat of suicide and the actual attempt of same. Documentation purports that Defendant Maldonado treated Mr. Maldonado during his detention at the Jail. Defendant Maldonado was a physician under the control of Defendant CHRISTUS SPOHN HOSPITAL when he treated Mr. Salazar. Defendant Real was a nurse of Defendant CHRISTUS SPOHN HOSPITAL when she supposedly treated Mr. Salazar. Plaintiffs contend that Mr. Salazar was given no and/or inadequate medical/psychological treatment during his detention and/or that Defendants Maldonado and Real acted with deliberate indifference to Mr. Salazar's serious medical needs by not having him transferred to a proper medical/psychological facility where he could be properly supervised and cared for in such a way to prevent his death and not having him kept on a continual suicide watch during his incarceration. Defendants Maldonado and Real's failure to have Mr. Salazar treated by a off-site mental health provider and/or their obvious desire to simply rid themselves of the responsibility for same clearly shows that they subjectively intended that the harm to Mr. Salazar occur and/or they were deliberately indifferent to such an outcome.

16.     Plaintiffs are informed and believe, and thereupon allege that in committing said acts and/or omissions, each individual Defendant was acting under color of state law. At all pertinent times, Defendant Nueces County authorized and/or ratified the wrongful and tortious acts and/or omissions described herein. At all pertinent times, Defendant Christus Spohn authorized and/or ratified the wrongful and tortious acts and/or omissions described herein. Furthermore, upon information and belief, Plaintiffs contend that each of the aforementioned individual Defendants acted with deliberate indifference to Salazar's serious medical needs. Each individual Defendant subjectively intended that the harm to Mr. Salazar occur. Each individual Defendant was aware that Mr. Salazar was a

continual threat to harm himself, and as such Mr. Salazar should be closely monitored to prevent

such harm.  A number of the individual Defendants are TCLEOSE trained and certified and/or

medically trained, and thus, are aware that suicide is a risk for those incarcerated and under their

care.  As mentioned, a number of the individual Defendants are medically trained to recognize

suicidal notions and tendencies and thus, should have recognized the clear and obvious signs

continually exhibited by Mr. Salazar and made sure he received necessary mental health supervision.

Each individual Defendant is further aware through the aforementioned training that a failure to

properly monitor and observe a suicidal inmate will lead to his eventual death.  More specifically,

each individual Defendant was aware that Mr. Salazar had previously attempted to kill himself while

he was housed at the Nueces County Jail and made threats to the same thing again.  With such

knowledge, each of the individual Defendants failed to properly monitor Mr. Salazar during his time

in the Nueces County Jail.  As a result of these actions and/or inactions, Mr. Salazar is now dead and

each individual Defendant is responsible for same through their subjective intent that the harm to

Mr. Salazar occur.

## IV.
## FIRST CLAIM FOR RELIEF - - §1983

17.    The allegations contained in paragraphs 10 through 17 are incorporated herein by reference,

the same as if fully set forth verbatim for any and all purposes of this pleading.

18.    The Civil Rights Act of 1871 (formerly known as the Ku Klux Klan Act), now codified as

42 U.S.C. §1983 as federal law provides:

>  "Every person who, under color of any statute, ordinance, regulation, custom or
> usage, of any state or territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or any other person within the jurisdiction
> thereof to the deprivation of any laws, privileges or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

42 U.S.C. §1983.

19.    The state action requirement for standing under 42 U.S.C. §1983 has more commonly been referred to as "color of state law," from the statute itself.  Plaintiffs are informed and believe, and thereupon allege that in committing said acts and/or omissions, Defendant Kaelin was the agent and employee of Defendant County and he was acting within such agency and employment and that Defendant Kaelin was acting under color of state law.  Plaintiffs are informed and believe, and thereupon allege that in committing said acts and/or omissions, Defendant Real was the agent and employee of Defendant Christus Spohn Hospital and Defendant Maldonado was a contracted employee of Defendant Christus Spohn Hospital and they each were acting within such agency, employment and/or contract and acting under color of state law.

20.    42 U.S.C. §1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States.  As such, Plaintiffs allege that Defendants, jointly and/or severally deprived Mr. Salazar of his Fourth Amendment rights and those rights, privileges, and immunities secured by the Constitution incorporated and applied to the states through the Fourteenth Amendment.  Defendants violated this provision by the following actions and/or omissions:

    a)    by acting with deliberate indifference to a substantial and known risk of harm to Mr. Salazar;

    b)    by failing to intervene, where such intervention would have prevented the death of Mr. Salazar; and

9

c)   in creating a danger, which otherwise would not have existed, but for the conduct of Defendants, and which made more likely the opportunity of harm to occur to Mr. Salazar.

21.   Defendants' actions and/or omissions were not "objectively reasonable" in light of the facts and circumstances confronting them without regard to their underlying intent or motivation.  Clearly, careful attention to the facts and circumstances of this particular case illustrates the unreasonableness of Defendants' actions.

22.   It is well-established that counties are liable under 42 U.S.C. § 1983 for constitutional torts that are in compliance and/or in accordance with their customs, practices, policies or procedures.  A county is liable for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision-making channels.

23.   Defendants are liable herein because they sanctioned the custom, practice and/or policy or procedures of, *inter alia*, 1) ignoring the serious medical needs of those entrusted to their care based either on expedience or ignorance to the consequences, 2) failing to discipline those persons whom are found to have ignored the medical needs of such individuals, 3) failing to adequately supervise and/or observe their inmates/detainees/arrestees, 4) failing to provide adequate man power to supervise and/or observe inmates/detainees/arrestees, 5) failing to provide adequate staff to handle situations stemming from the medical needs of inmates/detainees/arrestees, 6) failing to impose proper and sufficient policies and/or procedures as to the screening of inmates/detainees/arrestees in regard to their medical needs, 7) failing to act in compliance with and failing to enforce the policy (of both the Nueces County Jail and Texas Jail Standards) requiring

10

visual "checks," (especially those concerning suicidal inmates/detainees) and 8) failing to train and/or discipline those employees whom are found to have violated any of the above-noted policies.

24.     The actions and/or inactions taken in this case were taken pursuant to the customary practices and/or policies or procedures that were sanctioned by the entity Defendants.  Liability for the entity Defendants is established under §1983 because their "ignore all policies" attitude is a persistent, widespread practice of the county employees -- namely deputies/officers -- that, although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official policy.  The entity Defendants had actual or constructive knowledge of each practice, custom, and/or policy or procedure and numerous prior incidents of such conduct and/or inaction as to establish accession to that custom by the policy makers.  The entity Defendants' unspoken policies above is a decision that reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.  In the alternative, the entity Defendants are liable under §1983 for failing to adopt clear policies outlining the criteria for determining, relaying and/or treating the medical (mental and otherwise) needs of inmates/detainees/arrestees.

25.     Moreover, the entity Defendants are liable for the inadequate training of their deputies/officers/employees/agents under §1983.  Liability attaches to the entity Defendants because their failure to train amounts to deliberate indifference to the rights of the persons with whom they come in contact.

## VII.
## DAMAGES

26.     As a result of the foregoing unlawful and wrongful acts of Defendants, jointly and severally, Plaintiffs have been caused to suffer general damages which include, but are not limited to, the following: loss of a son, both physical and emotional injury, including but not limited to, pain and suffering, and severe emotional and mental distress, and shock, along with severe emotional distress, and loss of support, both emotional and financial.

27.     Said injuries have caused Plaintiffs to incur special damages which include but are not limited to: funeral and burial expenses and the loss of companionship and/or consortium, as well as lost support that Mr. Salazar would have provided during the remainder of his life.

28.     Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. §1988, a prevailing party in a  §1983 case is entitled to recover its attorney's fees.   Hence, Plaintiffs further pray for all costs and attorney fees associated with bringing the present case to trial.

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs pray that upon trial upon the merits, Plaintiffs recover damages against Defendants, jointly and severally; that this Court issue injunctive relief and/or provide judicial oversight to ensure compliance with Federal law; and that Plaintiffs recover against each Defendant all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation.  Moreover, Plaintiffs pray for all pre-judgment and post-judgment interest that can be assessed against the Defendants in the event of recovery; and that Plaintiffs recover against each Defendant any and all other general or specific relief to which they prove themselves justly entitled.

Respectfully submitted,

GALE, WILSON & SÁNCHEZ, PLLC
115 E. Travis, l9th Floor
San Antonio, Texas 78205
Telephone: (210)222-8899
Telecopier: (210)222-9526
Email: cjgale@gws-law.com


By: /s/ Christopher J. Gale
    Christopher J. Gale
    Southern District No. 27257
    Texas Bar No. 00793766
    *Attorney-In-Charge for Plaintiffs*

**Demand for Jury Trial**

Plaintiffs hereby demand trial by jury pursuant to Fed.R.Civ.P. 8(b).

**NOTICE OF ELECTRONIC FILING**

The undersigned counsel hereby certifies that he has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Southern District of Texas on the 4th day of May, 2012.

    /s/ Christopher J. Gale
    Christopher J. Gale

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 4th day of May, 2012, a true and correct copy of the foregoing was served upon the following by the means indicated below:

Douglas M. Kennedy                              *Via E-File Notification*
BRIN & BRIN, PC
615 N. Upper Broadway, Suite 1820
Corpus Christi, Texas 78401

Edward J. Kroger                                 *Via E-File Notification*
Leah A. Greene
KROGER | BURRUS
3100 Weslayan, Suite 300
Houston, Texas 77027

Alissa Anne Adkins                               *Via E-File Notification*
Melissa Vela-Martinez
NUECES COUNTY ATTORNEY'S OFFICE
901 LEOPARD ST., RM 2078
Corpus Christi, Texas 78401

Douglas E. Chaves                                *Via E-File Notification*
CHAVES RESENDEZ & RIVERO, L.L.P.
802 N. Carancahua, Suite 2011
Corpus Christi, Texas 78470

                                                  /s/ Christopher J. Gale
                                                 Christopher J. Gale

14